Filed:  July 8, 2011

IN THE SUPREME COURT OF THE STATE OF OREGON

STATE OF OREGON,

Petitioner on Review,

v.

JOSE GUADALUPE CAZARES-MENDEZ,
aka Leonardo Cruz-Casarez,

Respondent on Review.

(CC C052532CR; CA A136094; SC S058406 (Control))
_____

STATE OF OREGON,

Petitioner on Review,

v.

JORGE REYES-SANCHEZ,

Respondent on Review.

(CC C052531CR; CA A136062; SC S058554)
(Consolidated for argument and opinion)

En Banc

On review from the Court of Appeals.*

Argued and submitted January 13, 2011.

Timothy A. Sylwester, Assistant Attorney General, Salem, argued the cause and filed the briefs for petitioner on review.  With him on the briefs were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Daniel J. Casey, Portland, argued the cause and filed the briefs for respondent on review Jose Guadalupe Cazares-Mendez.

1

Robin A. Jones, Senior Deputy Public Defender, Salem, argued the cause and filed the brief for respondent on review Jorge Reyes-Sanchez. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

BALMER, J.

The decisions of the Court of Appeals are affirmed. The judgments of the circuit court in *State v. Cazares-Mendez*, case no. C052532CR, and in *State v. Reyes-Sanchez*, case no. C052531CR, are reversed, and the matters are remanded to the circuit court for further proceedings.


*Appeals from Washington County Circuit Court, Mark Gardner, Judge. 233 Or App 310, 227 P3d 172 (2010); 234 Or App 102, 227 P3d 1217 (2010).

2

BALMER, J.

Defendants José Guadalupe Cazares-Mendez and Jorge Reyes-Sanchez were convicted of aggravated murder in the death of Jessie Valero. During their separate trials, the court refused to allow them to present hearsay evidence from four different witnesses that another person, Tiffany Scherer, had stated that she had committed the murder. The Court of Appeals held that the trial court had erred in excluding the hearsay testimony. *State v. Cazares-Mendez*, 233 Or App 310, 227 P3d 172 (2010); *State v. Reyes-Sanchez*, 234 Or App 102, 227 P3d 1217 (2010). This court allowed the state's petitions for review. On review, we agree with the Court of Appeals and remand both cases for a new trial.

FACTUAL BACKGROUND

As noted, defendants were tried separately before different juries, although the same trial judge presided over both cases. For that reason, we describe the evidence that was introduced in both trials; we generally omit details that are not common to both cases. Some of those details were favorable to the defense, while other details were favorable to the state.[1] Most of those details are minor, however, and they do not affect

---

[1] For example, during the *Reyes-Sanchez* trial, defendant elicited that one witness to the hearsay statements, Jessica Callahan, had multiple prior convictions for the manufacture, distribution, and possession of methamphetamine. Those prior convictions were not brought out during the *Cazares-Mendez* trial. On the other hand, Callahan was questioned during the *Reyes-Sanchez* trial about Scherer's state when she described stabbing an unidentified woman. Callahan testified that Scherer was "excited" and that she had a "scary," "psycho" look. No similar testimony was presented in the *Cazares-Mendez* trial.

our final disposition of the case. In presenting an overview of the crime, we will set out the evidence in the light most favorable to the state, because it was the prevailing party before the jury in each case. *See State v. Thoma*, 313 Or 268, 270, 834 P2d 1020 (1992) (stating standard).

The victim, Jessie Valero, was found dead in her Hillsboro apartment on the morning of March 17, 2005. She had died from approximately 29 stab wounds. The apartment contained a red bicycle that Valero did not own, and the contents of her jewelry box had been emptied on the bed.

A key element in the cases against both defendants was the testimony of a third defendant, José Lugardo-Madero, who was himself facing murder charges for Valero's death. He testified that on March 15, 2005, he and both defendants had unsuccessfully attempted to get methamphetamine. Later, he went with both defendants to Valero's apartment complex. Defendants intended to break into Valero's apartment and steal her jewelry. Defendant Reyes-Sanchez had with him the red bicycle later found in the victim's apartment. Lugardo-Madero refused to go into the apartment and waited outside. After a while, Lugardo-Madero approached the apartment, heard noises, and fled.

Roughly two hours later, defendant Cazares-Mendez arrived at the apartment where Lugardo-Madero was staying. He went in the bathroom, washed his clothes, and bathed. Approximately two hours after that, defendant Reyes-Sanchez arrived. Both defendants then left.

Lugardo-Madero testified that he saw defendant Cazares-Mendez roughly a

4

week later. Cazares-Mendez admitted that he and Reyes-Sanchez had murdered Valero. He threatened to kill Lugardo-Madero if he told anyone.

Both Reyes-Sanchez and Cazares-Mendez later were indicted for two counts of aggravated murder, three counts of murder, one count of first-degree robbery, and one count of first-degree burglary. Reyes-Sanchez was tried first, beginning in January 2007. Cazares-Mendez was tried shortly afterward, beginning in late February 2007.

During their respective trials, both defendants attempted to offer evidence that another person, Tiffany Scherer, had confessed to the crime. Specifically, they offered testimony that Scherer had admitted committing the murder to four different witnesses on four separate occasions. Because the testimony was hearsay, both defendants attempted to introduce the evidence under exceptions to the hearsay rule. Defendant Cazares-Mendez sought to introduce the evidence under the "statement against penal interest" exception, OEC 804(3)(c). Defendant Reyes-Sanchez sought to introduce the evidence under the residual hearsay exception of OEC 803(28)(a). (We quote both of those hearsay exceptions and discuss them in detail below.) What follows is a summary of the testimony of the four witnesses as presented through defendants' offers of proof.

Connie Torres had known Scherer for five years and considered her a friend; she also had known Scherer's mother for 10-15 years. Torres also had known Valero. Approximately one week after Valero's death had been reported in the news, Torres found Scherer sitting under a friend's truck (the truck had a very high clearance), listening to music and rocking back and forth, "acting like a little kid." Torres coaxed

5

Scherer out, at which point Scherer broke down and confessed that she had stabbed a woman, although Scherer did not identify the person she had stabbed. Scherer stated that she and the woman had been arguing and then started fighting, at which point Scherer stabbed her. Scherer said that, once she started stabbing her, "she couldn't stop." Afterward, Scherer stated, she had attempted to make it look like a burglary.

Torres did not tell the police or defense investigators about Scherer's statements until January 2007. Torres admitted being an acquaintance of defendant Reyes-Sanchez, but there is no evidence in the record that she knew defendant Cazares-Mendez. Torres previously has been convicted of forgery. Both she and Scherer used methamphetamine, but Torres denied that they were using it when Scherer told her about the killing.

Naomi Rivera was a friend of both Scherer and defendant Cazares-Mendez. She was also an "acquaintance" of defendant Reyes-Sanchez. Rivera and Scherer sometimes used methamphetamine together. At some point after Rivera learned that Valero had been killed, Scherer told Rivera that she had stabbed a "bitch" who had been "coming at" Scherer.[2] Scherer did not name the woman who had been stabbed. Both Scherer and Rivera were using methamphetamine at the time that Scherer made the statements. There was a significant delay before Rivera reported the conversation to anyone.

---

[2] In the *Cazares-Mendez* trial only, Rivera asserted that Scherer had stated that "she stabbed her over and over again."

Jessica Callahan was using methamphetamine when she met Scherer sometime around March 2005. Callahan did not know either Valero or defendant Reyes-Sanchez; the record is silent as to whether she had any connection with defendant Cazares-Mendez. When they met in March, Callahan testified, Scherer stated that she was hiding from the police because she had stabbed a lady after the lady had "jumped" her. Scherer made stabbing motions when she described this. Scherer gave no further details about who was stabbed, when, or where. Callahan did not connect the incident with Valero's murder until others had said that Scherer had stabbed the victim. Callahan also delayed a substantial time before disclosing the statements to investigators, first doing so around November 2006.

Lisa Ann Smith had known Scherer for all of Scherer's life; she also had known Scherer's mother for years. Smith described Scherer as being like family to her, and said that Scherer called Smith her "Aunt Lisa." Smith did not know defendant Reyes-Sanchez; the record is silent as to whether she knew defendant Cazares-Mendez.

Smith did not know Valero, but she learned of her death in the newspaper. A couple of months afterward, on hearing rumors that Scherer had been involved in causing the victim's death, Smith asked Scherer if she had killed Valero. Scherer stated that she had been at a bar with Valero and that she and Valero went back to Valero's place. Scherer indicated that she had stabbed Valero about 22 times. Scherer also told

7

Smith that she had later sent someone back to rob the place.[3]

One particular point of Smith's testimony is worth emphasizing. She testified that Scherer had described Valero as having a seizure during the stabbing. Defense counsel offered evidence that Valero had epilepsy.

In both cases, the testimony of all four witnesses -- Torres, Rivera, Callahan, and Smith -- was not necessarily clear as to exactly when the witnesses gave the information to investigators or the police (except as already noted). Nevertheless, neither defendant appears to dispute that none of the four witnesses contacted police or investigators promptly, and a substantial amount of time elapsed before they revealed Scherer's statements.

Scherer testified in both trials in connection with defendants' offers of proof. She admitted that she was using methamphetamine during the period when the crime occurred. She also admitted knowing Torres, Rivera, and Smith. She denied knowing Callahan or Valero. She denied stabbing Valero, and she denied telling any of the witnesses that she had stabbed Valero.

---

[3] Although Smith testified in the second trial less than two months after she testified in the first, her memory became dramatically worse for the later trial. During the *Reyes-Sanchez* trial, Smith directly referred only once to problems with remembering things. During the *Cazares-Mendez* trial, however, Smith repeatedly stated that she was having difficulty remembering what had happened ("I'm having a hard time remembering everything right now"; "My mind is not real clear right now"; "I'm having a really hard time right now [remembering]"). She attributed this variously to "a bunch of traumatic things [that] happen[ed] with one of my kids" and "some counseling that's bringing up a lot of stuff in my life." Defense counsel had to refresh Smith's recollection with an investigator's report that related to her prior statements.

During the *Cazares-Mendez* trial only, defendant offered additional testimony from two other witnesses. First, Benilde Torres testified that, within two days of hearing about Valero's death, she saw Scherer with an inch-long scratch on the right side of her neck. Scherer claimed that it was a hickey,[4] but it did not look like a hickey to Torres. Second, Detective Patrick Brady testified that Hillsboro had no other murders in March 2005 that involved a female victim stabbed multiple times.

The trial court refused to allow either defendant to put on the hearsay testimony that Scherer had admitted killing Valero. We will consider the trial court rulings out of chronological order, because the court's ruling in *Cazares-Mendez* provides useful context to understand its earlier ruling in *Reyes-Sanchez*.

As mentioned, defendant Cazares-Mendez contended that the witnesses' testimony as to the statements by Scherer met almost all of the requirements of the "statement against penal interest" exception, OEC 804(3)(c). That rule provides, in part:

> "The following are not excluded by ORS 40.455 [OEC 802, generally excluding hearsay] if the declarant is unavailable as a witness:
>
> "* * * * *
>
> "(c) A statement which * * * at the time of its making * * * so far tended to subject the declarant to civil or criminal liability, * * * that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

---

[4] A "hickey" is "a temporary red mark on the skin (as one produced by biting and sucking)." *Merriam-Webster's Collegiate Dictionary* 546 (10th ed 1993).

9

Cazares-Mendez asserted that there were corroborating circumstances that clearly indicated the trustworthiness of the witnesses' testimony: Scherer had confessed to four separate witnesses that she had murdered a woman by stabbing her, to one witness that Valero was the victim, and to two witnesses that she had sent someone back to steal from the crime scene. Defendant admitted that one requirement of OEC 804(3)(c) was not met, because the declarant, Scherer, was available to testify as a witness (and had done so). Defendant asserted, however, that the Due Process Clause of the Fourteenth Amendment to the United States Constitution superseded the unavailability requirement, because it was an "artificial" restriction that was not rational under the circumstances. *See Chambers v. Mississippi*, 410 US 284, 93 S Ct 1038, 35 L Ed 2d 297 (1973) (violation of due process to use state evidentiary rule to exclude hearsay testimony that another person had admitted committing the crime, when there was considerable evidence of reliability of statements). The state countered that, in any event, the proffered evidence lacked the required trustworthiness.

The trial court agreed with the state, concluding that the "corroborating circumstances" did not clearly indicate the trustworthiness of the statements attributed to Scherer. The court stated:

"Well, first taking the Tiffany Scherer evidence. They don't meet the evidence code requirement for statements against penal interest. * * * [W]here she basically says that she killed someone or stabbed someone, that would be a crime. But it's not clear that it's Jessie Valero that she's talking about. And, you know, Tiffany Scherer is not unavailable. And there's a reason for the rules of unavailability in terms of a threshold for admissibility.

"Secondly, the only two facts, independent facts, that have been

10

brought out in this trial that would even potentially be corroborative of, you know, the fact that this, in fact, occurred were the statements of Anita Valero [*sic*] that her mother basically suffered from epilepsy, and in one of the statements that Tiffany Scherer is alleged to have made, there is reference to someone going into a seizure.

"* * * * *

"* * * Benilde Torres indicated that some period of time around the time of the murder, might have been three or four, maybe even five days later, she saw something that appeared to be a scratch on Tiffany Scherer's neck, and Tiffany Scherer said that it wasn't a scratch. It was a hickey. And she didn't think that it was. That's the sum total of corroboration that's outside of the other statements.

"You know, except for, I guess, the negative that nobody else -- no other woman was stabbed, which really doesn't indicate necessarily the truth of the statement that somebody was stabbed. And for those reasons the offer of proof is not allowed on that point."

In his trial, defendant Reyes-Sanchez asserted that the testimony should be admitted under the residual hearsay exception, OEC 803(28). That rule provides, in part:

"The following are not excluded by ORS 40.455 [OEC 802], even though the declarant is available as a witness:

"* * * * *

"(28)(a) A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that:

"(A) The statement is relevant;

"(B) The statement is more probative on the point for which it is offered than any other evidence that the proponent can procure through reasonable efforts; and

"(C) The general purposes of the Oregon Evidence Code and the interests of justice will best be served by admission of the statement into evidence."

Defendant Reyes-Sanchez argued that the testimony about Scherer's statements was

11

relevant and more probative than anything else he could procure through reasonable efforts, and that admitting the testimony would serve the general purposes of the Oregon Evidence Code and the interests of justice. Furthermore, defendant contended that the testimony of the witnesses contained the required circumstantial guarantees of trustworthiness. As in *Cazares-Mendez*, and largely for the same reasons, the state asserted that the testimony lacked the required circumstantial guarantees of trustworthiness.

Again, the trial court agreed with the state. The court began by noting that the testimony did not meet the requirements of the statement against penal interest exception, OEC 804(3)(c), because Scherer was available. The court then elaborated on its conclusion that the "statement against penal interest" exception did not apply, building from there to the conclusion that the residual hearsay exception did not apply either:

> "[E]ven if Tiffany Scherer were unavailable, the first two witnesses would not have qualified as a statement against penal interest because we're not even clear, in those statements, whether she's talking about Jessie Valero. Jessie Valero was never identified. You know, they -- the statements were made to -- in both cases, when not only was the declarant under the influence, but so was the hearer of the statement, the witness who would be testifying as to the declarant.
>
> "And, under those circumstances, you know, it -- it wouldn't even meet the -- the indicia of reliability and trustworthiness or even relevance in the sense that we would be knowing that we were talking about the same situation because it is possible that Tiffany Scherer stabbed somebody else, some other location, some other time and she wasn't even referring to Jessie Valero.
>
> "So, you know, those two statements clearly, you know, under even the exception against penal interest standard and certainly the residual exception standard do not meet the test. It's a little bit muddier in terms of the statements to Lisa Ann Smith and Connie Jo Torres * * *.

"But, you know, these statements do not have the indicia of reliability such that they would qualify under [OEC 803(28)]. They -- even if the statements were made, there's no trustworthiness that they're not the product of Tiffany Scherer -- even if they were made, that they're not the product of Tiffany Scherer's drug-induced hallucinations. Because in all the situations here, she was acting in the manner that -- that basically was indicative of somebody [who] was under the influence and in at least two or maybe three of the occasions it's clear that that was what her state was.

"And there's nothing else, other than the statements, that tied her to the scene or to the crime. There's no -- just as there's nothing that ties your clients in terms of the forensics, there's nothing that ties her to that."

At the conclusion of each trial, each defendant was convicted on all counts. The jury declined to impose the death penalty, and defendants each were sentenced to life in prison without the possibility of parole.

Both defendants appealed to the Court of Appeals, which reversed in both cases. The court ruled first in *Cazares-Mendez.* As in the trial court, defendant Cazares-Mendez asserted that the testimony met all the requirements of the "statement against penal interest" exception to the hearsay rule, OEC 804(3)(c), except the unavailability requirement. Defendant contended, however, that it would violate due process under the United States Constitution to prohibit him from presenting trustworthy evidence merely because the declarant, Scherer, was available. 233 Or App at 320.

The Court of Appeals agreed. The court first held that the corroboration requirement of OEC 804(3)(c) was "a screening device designed to frustrate fabrication either by declarants seeking to falsely exculpate a criminal defendant or by witnesses who, by way of hearsay, falsely ascribe inculpatory statements to purported declarants." 233 Or App at 325. The Court of Appeals concluded that corroborating circumstances

13

did clearly indicate the trustworthiness of the statements attributed to Scherer, for five reasons. First, Scherer had confessed to stabbing a female victim to death on four separate occasions to four different witnesses. *Id.* at 326. Second, neither Scherer nor the witnesses had any motivation to lie; Scherer had no reason to falsely claim to have killed Valero, and three of the four witnesses had no reason to falsely implicate Scherer in the murder. *Id.* at 326-28. Third, Scherer's statements to the witnesses were essentially consistent, and in some places included details that were peculiar to this murder. *Id.* at 328-29. In particular, the court noted that Valero had been stabbed 29 times: Smith testified that Scherer had stated that she had stabbed the victim 22 times, while both Torres and Rivera (Rivera only in the *Cazares-Mendez* case) described Scherer as stating that she had stabbed a woman repeatedly. *Id.* at 328. Furthermore, Valero had epilepsy, and Scherer had told Smith that Valero had had a seizure. *Id.* Finally, the crime scene showed evidence of a burglary, and both Torres and Smith reported that Scherer had stated that she had attempted to cover up the murder by making it look like a burglary or robbery. *Id.*

The Court of Appeals rejected the state's arguments that other evidence undermined the trustworthiness of the hearsay evidence. Among other reasons, the court was unpersuaded by the fact that the witnesses and the declarant, Scherer, were all methamphetamine users who, at the time of several of the statements by Scherer, were under the influence when the statements were made. *Id.* at 330.

Nevertheless, although the court concluded that the testimony met the trustworthiness requirement of OEC 804(3)(c), the court recognized that the rule did not

14

apply, because the declarant, Scherer, was available to testify. That did not end the matter, however. In *Chambers*, the United States Supreme Court held that a state court had violated a criminal defendant's due process rights when (among other things) it refused to allow three witnesses to testify that another person had admitted committing the crime to them. *See* 233 Or App at 331-33 (discussing *Chambers*). The Supreme Court had concluded that the statements had "'considerable assurance of their reliability,'" because the declarant had made them to close acquaintances near the time of the crime, because the confessions were corroborated by other evidence, and because the multiple confessions effectively corroborated each other. 233 Or App at 332-33 (quoting *Chambers*, 410 US at 300). The Court of Appeals concluded that the testimony in *Cazares-Mendez* met the requirements of *Chambers*, and so the trial court had erred in excluding it. 233 Or App at 336. Furthermore, the Court of Appeals determined that the error was not harmless. Accordingly, it reversed and remanded for a new trial.

In *Reyes-Sanchez*, the Court of Appeals wrote a briefer opinion, relying significantly on its opinion in *Cazares-Mendez*. The court noted that defendant Reyes-Sanchez had not preserved a due process argument or cited *Chambers* in the trial court. 234 Or App at 105. Nevertheless, the court concluded that the convictions should be reversed because there was error apparent on the face of the record under ORAP 5.45(1) (although an appellate court ordinarily will not consider unpreserved errors, "the appellate court may consider an error of law apparent on the face of the record"). Not only were the issues "factually and legally indistinguishable" from *Cazares-Mendez*, but granting a new trial to Reyes-Sanchez was the only way to prevent the "fundamental

15

unfairness" of having him remain convicted of murdering Valero when his codefendant obtained a new trial that might lead to an acquittal. 234 Or App at 105.

The state sought review in both cases, and we allowed both petitions.

OVERVIEW OF HEARSAY RULE

Before we turn to the particular issues in this case, it may be useful to provide some background regarding the admissibility of hearsay at trial. Hearsay has long been defined as an out-of-court statement offered to prove the truth of the matter asserted. *See* 2 *McCormick on Evidence* § 244 (Kenneth S. Broun ed., 6th ed 2006) (reviewing history of rule); *id.* § 246, at 129 (restating definition of hearsay in Federal Rule of Evidence 801 as "an out-of-court assertion, offered to prove the truth of the matter asserted"); John Henry Wigmore, 5 *Evidence in Trials at Common Law* § 1364 (James H. Chadbourn rev 1974) (reviewing history of the hearsay rule, defined as "that rule which prohibits the use of a person's assertion, as equivalent to testimony to the fact asserted, unless the assertor is brought to testify in the court on the stand"). That common-law definition today is codified in OEC 801(3): "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." In general, hearsay statements are not admissible. *See* OEC 802 ("Hearsay is not admissible except as provided in ORS 40.450 [OEC 801] to 40.475 [OEC 806] or as otherwise provided by law.").

The reason for the exclusion is that hearsay statements are generally considered to be untrustworthy. *Chambers*, 410 US at 298 ("The hearsay rule, which has long been recognized and respected by virtually every State, is based on experience and

16

grounded in the notion that untrustworthy evidence should not be presented to the triers of fact."); *Sheedy v. Stall*, 255 Or 594, 596, 468 P2d 529 (1970) ("Hearsay evidence is excluded because of its untrustworthiness.").  Because hearsay statements, by definition, have been made out of court, they lack

> "conventional indicia of reliability:  they are usually not made under oath or other circumstances that impress the speaker with the solemnity of his statements; the declarant's word is not subject to cross-examination; and he is not available in order that his demeanor and credibility may be assessed by the jury."

*Chambers*, 410 US at 298; *see State v. Kendrick*, 239 Or 512, 515, 398 P2d 471 (1965) ("The ground for the exclusion of hearsay is that the opposing party has no opportunity to confront in court the person making the statement and test his veracity and accuracy by cross examination."  (Citation omitted.)).

The rule against the admission of hearsay statements, however, is not absolute, and there are a number of recognized exceptions to the rule.  Those exceptions generally involve a statement that is "made under circumstances calculated to give some special trustworthiness to it."  *Kendrick*, 239 Or at 515.  OEC 803 and 804 list numerous examples of such exceptions.

That emphasis on trustworthiness is directly reflected in the text of the two hearsay exceptions at issue in this case.  The ruled relied on by defendant Cazares-Mendez, OEC 804(3)(c), permits the introduction of statements against penal interest only if "corroborating circumstances clearly indicate the trustworthiness of the statement."  The rule relied on by defendant Reyes-Sanchez, OEC 803(28)(a), authorizes the introduction of hearsay statements that do not fall within the enumerated exceptions

17

only if they have "equivalent circumstantial guarantees of trustworthiness" (and meet other requirements).

## TRUSTWORTHINESS AND WITNESS CREDIBILITY

The critical issue on review revolves around what those rules mean by "trustworthiness." The state asserts that courts can and should consider the credibility of the witnesses -- Torres, Rivera, Callahan, and Smith -- in determining whether the hearsay statements are trustworthy. The state notes that most of those witnesses have prior felony convictions, that they admitted to using methamphetamine during the period at issue (in some cases even being under the influence at the time of the statements), and that each witness had waited for "years" before disclosing the statements by Scherer to authorities. Furthermore, Scherer testified and denied making the statements. The state asserts that, as a factual matter, the trial court was entitled to conclude that the witnesses were not credible and that Scherer, the declarant, was.

We believe, however, that the state's argument misunderstands the nature of the trustworthiness at issue in hearsay cases. The relevant "trustworthiness" is not that of the witnesses who testify that the statement was made; it refers to whether the statement *by the declarant* has sufficient indicia of reliability. In considering "trustworthiness" for purposes of determining whether a hearsay exception applies, the credibility of the relating *witnesses* -- the individuals who testify as to what the declarant said -- is not the issue.

That conclusion follows from the text of the rules themselves. OEC 804(3)(c) refers to the "trustworthiness *of the statement*," while 803(28)(a) applies to a

18

"*statement* * * * having equivalent circumstantial guarantees of trustworthiness."

(Emphases added.) The "statement" is the statement by the declarant, not the testimony of the witness. *See* OEC 801(2) (defining "declarant" as "a person who makes a statement"); OEC 801(3) (defining "hearsay" as a "statement * * * offered in evidence to prove the truth of the matter asserted").

Furthermore, this court's case law confirms that a relating *witness's* credibility is not part of the court's determination of whether a hearsay statement is trustworthy. Both before and after the adoption of the Oregon Evidence Code in 1981, this court explained that the hearsay rule and its exceptions turn on the trustworthiness of the declarant's statement, not the credibility of the witness to the statement. Witness credibility, of course, is always critical. But just as credibility is for the jury to determine when the issue is what the witness saw, so too is credibility for the jury to determine when the issue is what the witness heard. As this court explained in *Sheedy*, a pre-OEC case:

> "Hearsay evidence is excluded because of its untrustworthiness. The declarant's accuracy and veracity cannot be tested by cross-examination. It is not the untrustworthiness of the testimony of the witness on the stand who is asked to testify to what the declarant said that causes the exclusion of hearsay testimony. The credibility of the witness can be tested by cross-examination. The problem of the trustworthiness of the witness in the courtroom is the same whether the witness is testifying to another's conduct or to another's words. It is the untrustworthiness of the declarant's statement that causes hearsay testimony to be excluded."

255 Or at 596-97 (citation omitted). *See also State v. Mendez*, 308 Or 9, 18-19, 774 P2d 1082 (1989) (post-OEC case quoting *Sheedy* to the same effect).

The very nature of hearsay demonstrates that the threshold

"trustworthiness" inquiry made by the court before ruling on admissibility does not depend on the credibility of the testifying witness. Hearsay does not exclude *all* testimony as to out-of-court statements, but only those statements offered to prove the truth of the matter asserted. Thus, as long as the declarant's statement is not offered to prove the truth of the matter asserted, a witness may testify to any out-of-court statement without running afoul of the prohibition against hearsay -- even though that witness's credibility remains an issue. *See Sheedy*, 255 Or at 597 (so noting).

Perhaps the best illustration of the concept that trial courts should not consider the credibility of the witness in evaluating whether a hearsay statement is trustworthy came in *Wright v. Swann*, 261 Or 440, 493 P2d 148 (1972). The plaintiff, an eight-year-old girl, brought a civil action against the defendant for having struck her with his car while she was in a crosswalk. The defendant asserted that the plaintiff had run into the side of his car. The defendant was allowed to testify that an unidentified bystander had said, in an excited utterance, "'Oh, God * * * it wasn't your fault. She darted out in front of me and ran into the side of your car.'" *Id.* at 442.

In upholding the trial court's decision to allow the testimony, the court recognized that allowing interested parties to offer hearsay statements from unidentified witnesses "carries with it the risk of perjured testimony of statements by so-called 'phantom witnesses.'" *Id.* at 450. The court quoted *Sheedy*, however, for the proposition that the untrustworthiness of the witness has nothing to do with whether a statement is hearsay. 261 Or at 451. The court confirmed that it is for the jury to decide whether the witness to the hearsay statement was credible:

20

"[U]nder the established rules of evidence, including the rules relating to 'spontaneous statements,' the risk of perjured testimony by an interested party is not an independent ground for the exclusion of testimony that would be admissible if given by an uninterested third party. Instead, this is a matter which goes to the credibility, rather than the admissibility, of such testimony. As such, it is for the jury to consider the source of such testimony, among other circumstances, in deciding whether to believe the testimony and the fact that it was given by an interested party does not provide an independent ground upon which a trial court may properly exclude such testimony from consideration by the jury."

*Id.* at 450-51.

If witness credibility were part of the trustworthiness of the hearsay statement, then one could hardly find more compelling facts for considering it than existed in *Wright*, where the witness was an interested party offering self-serving hearsay testimony. Nevertheless, this court held that witness credibility was purely an issue for the jury. As the court explained in *Sheedy*, unlike the declarant's statement, the witness's testimony is made under oath and is subject to cross-examination.[5]

---

[5] We add one note about legislative history that is relevant only to OEC 804(3)(c). In interpreting a statute, the parties may present legislative history to the court, and the court will give it the weight that it deems appropriate. *See* ORS 174.020(1)(b), (3) (so stating); *State v. Gaines*, 346 Or 160, 165-73, 206 P3d 1042 (2009) (analyzing ORS 174.020). In this case, none of the parties offered any legislative history. Nevertheless, our research discloses one potentially countervailing piece of legislative history applicable to OEC 804(3)(c). The commentary to that rule states:

"The common law refused to concede the adequacy of penal interest in large part because it distrusted evidence of confessions by third persons offered to exculpate the accused. This reflected the suspicion that *either the fact or the contents of the confession* were fabricated, enhanced in either case by the required unavailability of the declarant. * * * The trial court should construe the corroboration requirement in a manner that effectuates its purpose to circumvent fabrication."

21

In light of our conclusion that, under OEC 804(3)(c) and OEC 803(28)(a), trial courts are not to evaluate the credibility of the witness to the hearsay statement, we necessarily reject the state's primary arguments against the introduction of the testimony at issue here. Most of the state's contentions are irrelevant for purposes of determining whether the evidence is admissible (although they would be relevant to the jury's credibility determination). For admissibility purposes, a witness's delay in reporting the statements to the police is irrelevant, as is a witness's use of methamphetamine, or Smith's repeated assertions during the *Cazares-Mendez* trial that she was having memory

OEC 804 Commentary (1981) (emphasis added). Based on that statement in the commentary, Professor Kirkpatrick has written: "In light of these expressions of legislative intent, it would seem appropriate for courts to consider the trustworthiness of the witness as well as of the declarant in determining whether the corroboration requirement is satisfied." Laird C. Kirkpatrick, *Oregon Evidence* § 804.04[5], at 848 (5th ed 2007). *See State v. Lytsell*, 187 Or App 169, 178, 67 P3d 955 (2003) (reaching the same conclusion).

We believe that that conclusion reads too much into the legislative history. As we have noted, both the text of the OEC and the context of this court's prior case law demonstrate that the credibility of a relating witness is not relevant to whether a hearsay statement is trustworthy. The commentary is not to the contrary. It does not direct courts to consider the credibility of the witness, but to interpret the corroboration requirement to prevent fabrication. Courts adequately address the risk of fabrication when they require that there be "corroborating circumstances [that] clearly indicate the trustworthiness of the statement." Many of the same circumstances that corroborate the trustworthiness of the hearsay statement will *also* serve to minimize any risk that "the fact or the contents of the confession were fabricated." These cases offer a good example: Defendants demonstrated (among other things) that the declarant confessed to four different witnesses on four different occasions, in several cases giving distinctive details about the crime. One confession might be fabricated, but four is less likely, particularly when the declarant's statements include details about the crime. If the legislature had intended for trial courts to make credibility determinations counter to the ordinary rules of evidence that govern hearsay, we believe it would have done so more specifically.

problems. And the state's largely speculative assertions that the witnesses were biased (because they were part of "a larger, inter-connected, local group of methamphetamine abusers and dealers with connections to defendants") are also irrelevant. Even the fact that Scherer took the stand and denied making the statements is irrelevant to the trial court's determination of trustworthiness for purposes of admissibility. The credibility of Scherer's testimony at trial, and that of the other witnesses, was a matter for the jury. To the extent that the trial court may have relied on any or all of those considerations, it erred.

Having determined what may and may not be considered in evaluating "trustworthiness" under OEC 804(3)(c) or OEC 803(28)(a), we return to the facts of this case. We review preliminary findings of fact by the trial court for whether any evidence in the record supports them, but we review the "ultimate legal conclusion[] as to whether the hearsay statement is admissible under an exception to the hearsay rule" for errors of law. *State v. Cook*, 340 Or 530, 537, 135 P3d 260 (2006).

In analyzing the issues, we ordinarily begin with statutory arguments before proceeding to constitutional questions. *See State v. Barrett*, 350 Or 390, 397-98, __ P3d __ (2011) (citing cases). In this context, as this court specifically held in *Thoma*, the due process analysis articulated in *Chambers* applies only if the evidence could not be admitted under any provision of state law. 313 Or at 282-83 ("[T]o be admissible under the due process rule of *Chambers*, the evidence must be inadmissible under the Oregon Evidence Code."). In other words, state law does not violate due process if it offers any avenue by which the evidence may be introduced, regardless of whether defense counsel

23

identified that avenue in a particular trial. Although the state agrees with defendant Cazares-Mendez that the evidence is not admissible under any other provision of the Oregon Evidence Code, defendant Reyes-Sanchez asserts that the evidence is admissible under the residual hearsay exception of OEC 803(28)(a). Accordingly, we begin by considering that statutory basis for admissibility of the proffered evidence.

REYES-SANCHEZ

As noted, defendant Reyes-Sanchez contends that the hearsay testimony in his case is admissible under the residual hearsay exception, OEC 803(28)(a). The state argues, however, that OEC 803(28)(a) does not apply on the facts of this case. As we will explain, we agree with the state on that point.

For convenience, we repeat the relevant portions of OEC 803(28)(a):

"The following are not excluded by ORS 40.455 [OEC 802], even though the declarant is available as a witness:

"* * * * *

"(28)(a) A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that:

"(A) The statement is relevant;

"(B) The statement is more probative on the point for which it is offered than any other evidence that the proponent can procure through reasonable efforts; and

"(C) The general purposes of the Oregon Evidence Code and the interests of justice will best be served by admission of the statement into evidence."

This court explained the scope of that residual hearsay exception in *State v. Campbell*, 299 Or 633, 705 P2d 694 (1985). The defendant in that case had been

24

convicted of sexually abusing a three-year-old child. The trial court had allowed the child's mother to offer hearsay testimony about the child's statements regarding the incidents, concluding that they fell under the residual hearsay exception of OEC 803(28)(a) (at that time numbered OEC 803(24)). This court rejected that conclusion, although a majority held that the evidence nevertheless might be admissible under a different hearsay exception.

In analyzing the residual hearsay exception, this court observed that the commentary to that rule "clarifies the purpose and scope of the residual hearsay exception in Oregon." *Id*. at 638. That commentary stated that the legislature

> "'intends that these provisions be used very rarely, and only in situations where application of the hearsay rule and its other exceptions would result in injustice. These rules are not a broad grant of authority to trial judges to admit hearsay statements.'"

*Id*. at 639 (quoting OEC 803 Commentary (1981)). Relying on that commentary, this court then explained that the residual hearsay exception is narrow:

> "The passage above reserved to the legislature the authority to fashion new exceptions to the hearsay rule and expressly circumscribed the authority of the judicial system to create categories of hearsay which will be admissible under the residual exception. The authority of trial courts is limited to admitting hearsay very rarely in exceptional cases where the particular circumstances of the declarant and the out-of-court statement are demonstrably trustworthy."

*Id*. (footnote omitted).

This court went on to conclude that the residual hearsay exception does not apply to those categories of evidence addressed by specific hearsay exceptions. *Id*.; *see also* 299 Or at 661 (Campbell, J., dissenting) (agreeing with majority that residual

25

hearsay exception does not permit courts to create new "classes" of exceptions to hearsay rule). The court noted that there was a specific hearsay exception for complaints of sexual misconduct, OEC 803(18a). Because "the legislature made a conscious decision to restrict unexcited hearsay declarations of sexual misconduct by enacting OEC 803(18a)," the trial court had erred in allowing hearsay testimony of sexual misconduct under the residual hearsay exception. 299 Or at 640. Only after determining that the residual hearsay exception relied on by the trial court did *not* apply did this court consider whether the hearsay testimony was admissible under the specific requirements of OEC 803(18a). 299 Or at 640-46 (explaining the limitations on the testimony).[6]

*Campbell* demonstrates that the residual hearsay exception cannot be used to rescue hearsay statements that fall within a specific category of hearsay exception, but that fail to meet the conditions for admissibility imposed by the specific exception. In this case, the hearsay testimony that defendant Reyes-Sanchez sought to introduce falls within a specifically defined hearsay exception -- the statement against penal interest exception of OEC 804(3)(c). The requirements of that specific exception control over the general terms of the residual hearsay exception. *See* ORS 174.020(2) ("When a general

---

[6] The majority in *Campbell* went on to hold that the disputed evidence could be admissible under OEC 803(18a), depending on the outcome of a competency hearing before the trial court. Three members of the court disagreed with the majority's interpretation of OEC 803(18a), asserting that the hearsay evidence was not admissible under that exception. 299 Or at 653 (Campbell, J., dissenting). As to the issue relevant to this case, however -- the interpretation of the residual hearsay exception as limited to "very rare and exceptional cases" -- the dissent's views were identical to those of the majority. *See id.* at 661 (Campbell, J., dissenting).

and particular provision are inconsistent, the latter is paramount to the former so that a particular intent controls a general intent that is inconsistent with the particular intent."). Because "the legislature made a conscious decision to restrict" the admission of hearsay statements against penal interest, *see Campbell*, 299 Or at 640, the residual hearsay exception of OEC 803(28)(a) does not apply.

Having rejected defendant Reyes-Sanchez's argument that the evidence was admissible under OEC 803(28)(a), we must consider his alternative argument on review -- that the hearsay statements should have been admitted for the reasons articulated by the Court of Appeals.

As we previously noted, the Court of Appeals in *Reyes-Sanchez* relied on its substantive conclusion in *Cazares-Mendez* that the evidence was admissible under the statement against penal interest exception of OEC 804(3)(c) as modified by application of the Due Process Clause of the United States Constitution. *Reyes-Sanchez*, 234 Or App at 104-05. In light of its holding in *Cazares-Mendez* that the evidence was admissible, the Court of Appeals determined that the trial court's exclusion of the evidence in *Reyes-Sanchez* constituted plain error under ORAP 5.45(1). 234 Or App at 105.

On review, the state does not challenge the Court of Appeals' application of the plain error rule. The only remaining issue in *Reyes-Sanchez*, then, is the substantive one presented in *Cazares-Mendez*: whether the hearsay statements in fact were admissible under OEC 804(3)(c), as modified by the requirements of due process. We turn to that question.

CAZARES-MENDEZ

27

Defendant Cazares-Mendez relies on the statement against penal interest exception, OEC 804(3)(c), as modified by the requirements of due process. For convenience, we repeat the relevant portions of that rule:

> "The following are not excluded by ORS 40.455 [OEC 802] if the declarant is unavailable as a witness:
>
> "* * * * *
>
> "(c) A statement which * * * at the time of its making * * * so far tended to subject the declarant to * * * criminal liability, * * * that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

Defendant Cazares-Mendez asserts that the trustworthiness of the hearsay testimony that he proffered is clearly indicated by corroborating circumstances. We agree. In this case, the jury could find that Scherer confessed on four separate occasions to four different witnesses. All of the statements were identical at their core, in that Scherer had admitted to stabbing to death a female victim. (To Smith, Scherer admitted stabbing Valero in particular.) Those confessions were against Scherer's interest, in that they could expose her to criminal liability. Scherer was not under any pressure to confess, and she obtained no benefit from doing so. The statements were made shortly after the murder, and (with the exception of the statements to Smith) were spontaneous. Furthermore, several of the statements included additional, corroborating details about the crime: three of the witnesses reported Scherer as stating that she had stabbed the victim repeatedly (the victim was stabbed about 29 times); two witnesses reported

Scherer as stating that she had attempted to make the murder appear to be a robbery or burglary, with one witness testifying that Scherer stated she had sent someone back to rob the place; and one witness testified that Scherer had described Valero as suffering a seizure during the attack, when Valero in fact had epilepsy.

All those considerations were relevant to determining the trustworthiness of Scherer's hearsay statements. The state itself concedes as much. Yet the trial court in *Cazares-Mendez* seemingly failed to give weight to any of them, mentioning only one (the statement that Valero had had a seizure during the attack, when Valero had epilepsy). The trial court erred as a matter of law in failing to evaluate those considerations in determining whether the hearsay statements were trustworthy.[7]

We conclude, as did the Court of Appeals, that those corroborating circumstances clearly indicate the trustworthiness of the hearsay statements offered by defendant Cazares-Mendez.[8] Accordingly, that aspect of OEC 804(3)(c) was met in this

---

[7] On review, the state contends that other considerations negated a determination that the hearsay statements were trustworthy. In particular, the state asserts that there is no independent evidence to establish that Scherer committed the murder. Certainly, such independent evidence *could* constitute corroborating circumstances indicating the trustworthiness of the hearsay statement. But nothing in the text or context of OEC 804(3)(c) *requires* such independent evidence. Indeed, as the trial court noted in *Reyes-Sanchez,* when it comes to forensic evidence, nothing ties either the defendants or Scherer to the crime.

The state's other considerations that allegedly negate a finding of truthfulness all relate to witness credibility. We have already explained why they cannot be considered.

[8] We noted earlier that defendant Cazares-Mendez offered two other facts in

29

case.

It is undisputed, however, that the hearsay statements at issue are not admissible under OEC 804(3)(c), because the declarant, Scherer, was available to testify. As did the Court of Appeals, we now turn to the question whether due process nevertheless required the trial court to admit the testimony.

The key case in that regard is *Chambers*. Briefly, the facts of that case were as follows. The defendant was charged with having murdered a police officer. The defendant asserted that another man was the killer. Not only had the other suspect admitted to three friends in private conversations that he had killed the officer, but he had also signed a written confession, although he later repudiated it. 410 US at 287-89. The defendant called the other suspect to the stand and introduced the confession, but the state elicited from the suspect that he had repudiated the confession, and the trial court, based on state law, refused to allow the defendant to cross-examine the suspect as an adverse witness. *Id.* at 291-92. The defendant also sought to introduce the testimony of the three witnesses to whom the suspect had confessed, but the trial court excluded the testimony as inadmissible hearsay -- state law did not recognize a hearsay exception for statements

support of the trustworthiness of the hearsay statements: the absence of any other stabbing murder of a female during the time period, and the presence of a scratch on Scherer's neck shortly after the murder. While those facts do provide additional support for the trustworthiness of the hearsay statements, they are not essential to our determination that the hearsay statements were trustworthy. We state that conclusion expressly because we are also considering the trustworthiness of the hearsay statements in *Reyes-Sanchez*, and those additional facts do not appear to have been introduced during that trial.

30

against penal interest. *Id.* at 292-93, 299.[9]

The United States Supreme Court concluded that the defendant had been denied "a trial in accord with traditional and fundamental standards of due process." *Id.* at 302. Besides concluding that the trial court had erred in refusing to allow the defendant to cross-examine the other suspect, the Court also held that, under the circumstances, due process required the trial court to admit the hearsay testimony by the three witnesses. The Court explained that the testimony of the three witnesses was offered "under circumstances that provided considerable assurance of their reliability." *Id.* at 300. Specifically:

> "First, each of [the other suspect's] confessions was made spontaneously to a close acquaintance shortly after the murder had occurred. Second, each one was corroborated by some other [independent] evidence in the case * * *. The sheer number of independent confessions provided additional corroboration for each. Third, whatever may be the parameters of the penal-interest rationale, each confession here was in a very real sense self-incriminatory and unquestionably against interest. [The other suspect] stood to benefit nothing by disclosing his role in the shooting to any of his

---

[9] In *Chambers*, the state evidentiary rule prevented the defendant from introducing evidence of the other suspect's confession to the crime, either as substantive evidence (through the hearsay testimony of the witnesses who heard him confess) or as impeachment evidence challenging his denial of any confession. *Chambers*, 410 US at 294. Here, in contrast, the state suggests that it might have been possible for defendants to have called Scherer as their witness and, if she denied making the statements at issue, attempted to introduce her hearsay statements as impeachment evidence. *But see Cazares-Mendez*, 233 Or App at 336 n 20 (concluding that the evidence would not have been admissible for purposes of impeachment, because the primary purpose would have been to expose the jury to otherwise inadmissible testimony). Defendants did not attempt to call Scherer, other than during their offer of proof, and we express no opinion whether, as the Court of Appeals concluded, defendants could not have called Scherer for the primary purpose of impeaching her.

31

three friends, and he must have been aware of the possibility that disclosure would lead to criminal prosecution. * * * Finally, if there was any question about the truthfulness of the extrajudicial statements, [the other suspect] was present in the courtroom and was under oath. He could have been cross-examined by the State, and his demeanor and responses weighed by the jury."

*Id.* at 300-01 (citations and footnotes omitted). Because the hearsay statements were trustworthy and were central to the defendant's' defense, the Court concluded, due process required that the testimony be admitted:

"Although perhaps no rule of evidence has been more respected or more frequently applied in jury trials than that applicable to the exclusion of hearsay, exceptions tailored to allow the introduction of evidence which in fact, is likely to be trustworthy have long existed. *The testimony rejected by the trial court here bore persuasive assurances of trustworthiness*, and thus was well within the basic rationale of the exception for declarations against interest. That testimony also was critical to [the defendant's] defense. In these circumstances, *where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice*."

*Id.* at 302 (emphasis added).

*Chambers* remains good law. The United States Supreme Court recently reaffirmed the holding of *Chambers* in *Holmes v. South Carolina*, 547 US 319, 325-26, 126 S Ct 1727, 164 L Ed 2d 503 (2006), where the Court unanimously concluded that the trial court erred in preventing a defendant from introducing hearsay testimony that another person had admitted committing the crime. Other courts have recently relied on *Chambers* to conclude that state laws restricting the introduction of trustworthy hearsay evidence violated due process, where the evidence was that another person had committed the crime. *E.g., Lunbery v. Hornbeak*, 605 F3d 754, 760-62 (9th Cir), *cert den*, __ US __, 131 S Ct 798, 178 L Ed 2d 545 (2010) (relying on *Chambers*, the court

32

held that the petitioner was entitled to federal habeas corpus relief when the state trial court had excluded hearsay testimony that another person had admitted committing the murder at issue); *Chia v. Cambra*, 360 F3d 997, 1003-08 (9th Cir 2004), *cert den*, 544 US 919 (2005) (relying on *Chambers*, the court held that the petitioner was entitled to federal habeas corpus relief when the state trial court had excluded hearsay testimony that one of the murderers had exculpated petitioner while admitting his own guilt).

We have already concluded that the "corroborating circumstances clearly indicate the trustworthiness" of the hearsay statements at issue here. We see no meaningful distinction between that standard and *Chambers'* requirement that the hearsay statements have "persuasive assurances of trustworthiness." *Id.* at 302. Nor does the state assert that any difference exists.

The state contends, however, that due process is not violated here, because the unavailability requirement of OEC 804(3)(c) reflects a rational and reasonable policy preference for live testimony by the declarant, rather than hearsay testimony by witnesses. As the United States Supreme Court has explained, a criminal defendant's right to a "meaningful opportunity to present a complete defense" is violated by "evidence rules that infring[e] upon a weighty interest of the accused and are arbitrary or disproportionate to the purposes they are designed to serve." *Holmes*, 547 US at 324 (alteration in original; internal quotation marks and citations omitted) (trial court erred when it prohibited criminal defendant from offering hearsay testimony that another person had confessed to the crime; the trial court had improperly relied on the strength of the prosecution's case, not the probative value of the defendant's evidence). *Holmes* cited

33

*Chambers* as an example of such an arbitrary or disproportionate rule. 547 US at 325-26. The state contends that OEC 804(3)(c)'s requirement that the declarant be unavailable is not arbitrary or disproportionate; it instead reflects a sensible preference that the declarant, when available, should be called to the stand and directly examined in the presence of the jury, rather than permit a defendant to present less reliable hearsay testimony.

Defendant Cazares-Mendez asserts -- and we agree -- that, where the unavailability requirement is used, as here, to exclude otherwise trustworthy evidence that, if believed, shows that a person other than defendant committed the crime, that requirement is arbitrary and disproportionate to the purpose that the evidentiary rule is designed to serve. As defendant correctly points out, the unavailability of a declarant who has allegedly confessed to the crime would not make her hearsay testimony *more* reliable -- it would make it *less* reliable. If the hearsay declarant is available, as here, the declarant can take the stand and clarify or refute the confession that he or she allegedly made. If the declarant is unavailable, however, no such opportunity exists. Indeed, the unavailability of the declarant actually would help witnesses concoct falsified "confessions" by absent third parties, because they would know that the missing declarant will not be around to deny their claims. Accordingly, we conclude that the Due Process Clause, as interpreted in *Chambers* and similar cases, required the trial court to disregard the "unavailability" requirement of OEC 804(3)(c) and permit the testimony of Torres, Rivera, Callahan, and Smith.

The Court of Appeals also concluded that the error was not harmless. 233

34

Or App at 337. The court noted that the hearsay testimony was central to defendant's claim that another person committed the crime, and it was "sufficiently substantiated as trustworthy by corroborating circumstances." *Id*. Although the state presented substantial evidence of defendant's guilt, there was no forensic evidence directly linking defendant to the crime. *Id*. at 337-38. The state does not challenge the Court of Appeals' determination that, if the trial court erred, the error was prejudicial.

We conclude that the trial court erred in *Cazares-Mendez* and that that error requires reversal. In determining whether "corroborating circumstances clearly indicate the trustworthiness of the statement" under OEC 804(3)(c), the trial court erred as a matter of law in failing to consider all the relevant circumstances. Moreover, while Scherer's availability to testify meant that the hearsay statements were not admissible under OEC 804(3)(c), due process nevertheless required that the hearsay testimony be admitted. We agree with the Court of Appeals that the case must be remanded for a new trial.

CONCLUSION

In summary, we conclude that courts evaluating "trustworthiness" under the hearsay exceptions should not consider the credibility of the witnesses testifying to the hearsay statements, but rather should focus on whether the declarant's statements are sufficiently corroborated. We conclude in both *Cazares-Mendez* and *Reyes-Sanchez* that the hearsay statements met the requirements for admission as statements against penal interest under OEC 804(3)(c), but for the fact that the declarant was available to testify. Further, we conclude that barring the admission of hearsay statements that another person

35

had confessed to the crimes with which defendants were charged on the ground that the declarant was available to testify was, on the facts here, a violation of each defendant's rights under the Due Process Clause.

The decisions of the Court of Appeals are affirmed. The judgments of the circuit court in *State v. Cazares-Mendez*, case no. C052532CR, and in *State v. Reyes-Sanchez*, case no. C052531CR, are reversed, and the matters are remanded to the circuit court for further proceedings.