Argued and submitted March 26, 2019; in Case No. 17CR32712, remanded for entry of judgment omitting reference to "persistent involvement" enhancement factor on attempted first-degree burglary conviction, otherwise affirmed; in Case No. 17CR26632, affirmed February 3; petition for review denied July 8, 2021 (368 Or 348)

# STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

# THOMAS DAVID PUSZTAI,
aka Thomas Pusztai,
aka Thomas D. Pusztai,
*Defendant-Appellant.*

Coos County Circuit Court
17CR26632, 17CR32712;
A165949 (Control), A165950

481 P3d 946

In this consolidated criminal appeal, defendant appeals from a judgment of conviction in Case No. 17CR32712 for criminal mischief in the second degree and burglary in the first degree and, in Case No. 17CR26632, for burglary in the second degree and theft in the third degree, which the court merged at sentencing. Defendant asserts that the trial court erred in denying his motion to suppress, proffering two alternative points in his encounter with police where he claims compelling circumstances required the giving of *Miranda*-like warnings. Additionally, defendant challenges the court's imposition of an upward departure sentence based, in part, on the unpleaded enhancement factor of persistent involvement. *Held*: Even assuming the points identified by defendant constituted compelling circumstances, the Court of Appeals held that defendant did not establish that admission of the unsuppressed statements was harmful. The Court of Appeals concluded that the trial court would have imposed the upward departure sentence based on the properly pleaded factor and remanded for entry of judgment omitting the reference to the unpleaded factor.

In Case No. 17CR32712, remanded for entry of judgment omitting reference to "persistent involvement" enhancement factor on attempted first-degree burglary conviction; otherwise affirmed. In Case No. 17CR26632, affirmed.

Richard L. Barron, Senior Judge.

Matthew Blythe, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Christopher A. Perdue, Assistant Attorney General, argued the cause for respondent. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Lagesen, Presiding Judge, and DeVore, Judge, and James, Judge.

JAMES, J.

In Case No. 17CR32712, remanded for entry of judgment omitting reference to "persistent involvement" enhancement factor on attempted first-degree burglary conviction; otherwise affirmed. In Case No. 17CR26632, affirmed.

**JAMES, J.**

This is a consolidated appeal of two cases, Case Nos. 17CR26632 (A165949 on appeal) and 17CR32712 (A165950 on appeal). In Case No. 17CR32712, the state charged defendant with burglary in the first degree, ORS 164.225 (Count 1); criminal mischief in the second degree, ORS 164.354 (Count 2); and possession of a burglary tool or theft device, ORS 164.235 (Count 3). In that case, defendant waived a jury and the state tried its case against defendant to the court, which found defendant guilty of Count 2. The court also found defendant guilty of attempted first-degree burglary as a lesser included offense of Count 1.

In Case No. 17CR26632, the state charged defendant with burglary in the second degree, ORS 164.215 (Count 1), and theft in the third degree, ORS 164.043 (Count 2). The state tried its case against defendant to a jury, which found defendant guilty of both counts. The court merged the guilty verdicts on those counts at sentencing.

On appeal, defendant raises two assignments of error and one supplemental assignment of error. Defendant's supplemental assignment of error challenges his conviction in Case No. 17CR26632. There, although the jury verdicts were unanimous, defendant challenges the giving of a nonunanimous jury instruction by the trial court. That argument is foreclosed by *State v. Flores Ramos*, 367 Or 292, 334, 478 P3d 515 (2020) ("[T]he trial court's instruction to the jury that it could return a nonunanimous verdict did not amount to a structural error and was harmless beyond a reasonable doubt.").

In defendant's first assignment of error, he challenges the trial court's denial of his motion to suppress statements elicited, according to defendant, while he was in compelling circumstances sufficient to require *Miranda*-like warnings under Article I, section 12, of the Oregon Constitution. While the trial court did suppress statements elicited after a certain point in the encounter, defendant proffers two alternative points earlier in the encounter where he claims suppression was required. As we explain, we need not determine if either of those alternative points constitute compelling circumstances under Article I, section 12,

because we conclude that defendant has not established that admission of the unsuppressed statements was harmful.

In defendant's second assignment of error, he challenges the trial court's imposition of an upward departure sentence in Case No. 17CR32712 on the count of attempted first-degree burglary based on an unpleaded enhancement factor, specifically "Persistent Involvement Unrelated to Current Crime." The state contends that even if the judgment reflects an unpleaded enhancement factor, any error is harmless because the record reflects that the trial court relied on another enhancement factor that was pleaded. The state acknowledged at oral argument, however, that the judgment should be corrected to eliminate reference to the unpleaded enhancement factor. We agree and remand to the trial court for entry of a judgment that omits that reference.

Whether circumstances surrounding the questioning of a suspect are compelling so as to require *Miranda*-like warnings under Article I, section 12, is a question of law, reviewed for errors of law. *See State v. Roble-Baker*, 340 Or 631, 640-41, 136 P3d 22 (2006). In this case, because our resolution of the case ultimately turns on whether any error with respect to the admission of defendant's statements was prejudicial to him, our consideration of the record necessarily includes all pertinent portions. *State v. Dowty*, 299 Or App 762, 763-64, 452 P3d 983 (2019).

Officer George received a citizen's report that "a suspicious vehicle was parked" in a residential area, and the vehicle's occupants were knocking on doors. George found the unoccupied vehicle in the neighborhood but was not able to immediately locate the vehicle's occupants. The citizen called dispatch again and provided a description and location of one of the occupants. George went to the location and found defendant, who matched the description provided by the caller.

George got out of his patrol car and walked over to defendant. Defendant had been walking down the street but stopped when he saw the officer coming toward him. George asked whether defendant "came from a vehicle parked about a block and a half away." Defendant replied that he had.

George's demeanor at this point was "casual." Defendant identified himself, and George asked why defendant had been knocking on doors. Defendant responded that he had run out of gas and was checking to see if anyone in the neighborhood would give him some gas. George ended the contact.

Officer Volin "advised [George] by radio that [he] was working on a case where [defendant] was involved, and [he] wanted to speak with him if he had a minute to answer some questions." George recontacted defendant, stating, "Hey, Officer Volin needs to talk to you about a case of his. Do you mind waiting here for him?" Defendant replied that "it was okay, but just not take too long." Volin arrived at the scene five to 10 minutes later and recorded his conversation with defendant using a body-mounted microphone:

"[VOLIN]:   I said, I'm Officer Volin from the Police Department.

"[DEFENDANT]:   (Inaudible response.)

"[VOLIN]:   Good. How are you today?

"[DEFENDANT]:   All right.

"[VOLIN]:   I'll advise you our conversation is being recorded. Okay?

"[DEFENDANT]:   That's fine.

"[VOLIN]:   So, the reason I'm here is about a theft from a house yesterday.

"[DEFENDANT]:   Okay.

"[VOLIN]:   Do you know anything about that?

"[DEFENDANT]:   What house?

"[VOLIN]:   Well, that's why I'm asking you if you know anything about that. You have no idea? Where were you at yesterday?

"[DEFENDANT]:   Um, I was just at that A&B Storage, I believe.

"[VOLIN]:   A&B Storage?

"[DEFENDANT]:   (Simultaneously) (Not understandable.)

"[VOLIN]:   What time was that at?

"[DEFENDANT]:   Did it have—I don't know. Did it have anything to do with Maggie (phonetic), my ex-girlfriend?

"[VOLIN]:   No, it doesn't.

"[DEFENDANT]:   Great. Well, that's what I've been going through. So—

"[VOLIN]:   (Interposing) Okay.

"[DEFENDANT]:   I don't know anything about (not understandable).

"[VOLIN]:   So—so, I got a call yesterday about a guy in a black leather jacket—

"[DEFENDANT]: (Interposing) Yeah, (not understandable) jacket.

"[VOLIN]:   —like that on[e].

"[VOLIN]:   Yep. You were over on Lakeview. You were in someone's—next to their house. You said you were going to ask them for gas.

"[DEFENDANT]:   Absolutely not. Absolutely not.

"[VOLIN]:   No?

"[DEFENDANT]:   Absolutely not. That was—I was—I was in—I was in—let's see. A&B—somebody said something about, they found somebody in a boat, or something.

"[VOLIN]:   Huh uh.

"[DEFENDANT]:   What?

"[VOLIN]:   Huh uh. I don't know.

"[DEFENDANT]:   Somebody that—that's what it was supposed to be.

"[VOLIN]:   Okay.

"[DEFENDANT]:   (Not understandable) in the boat.

"[VOLIN]:   Okay.

"[DEFENDANT]:   So, I—I—

"[VOLIN]:   (Interposing) So, I'm going to show you a picture. I want you to tell me who you think it is."

On appeal, defendant contends that, at that point in time—that is, when Volin asked defendant to identify the person in the photograph—he was in compelling circumstances, and the trial court erred in not suppressing all statements made after that point. Those statements were as follows:

"[DEFENDANT]:   Show it to me.

"[VOLIN]:   Yep. Who's that?

"[DEFENDANT]:   Not me.

"[VOLIN]:   Really?

"[DEFENDANT]:   Nope.

"[VOLIN]:   Let me just show it to Officer George, here. Let's see who he thinks—

"[DEFENDANT]:   (Simultaneously) Yeah. That's not me. But, what does a picture got to do with anything?

"[VOLIN]:   Well, this is you right before you burglarized this guy's side shop and stole a gas can."

Defendant alternatively argues that this point in the encounter constitutes compelling circumstances, and the trial court erred in failing to suppress all statements elicited from this point onward. Those statements are as follows:

"[DEFENDANT]:   (Simultaneously) (Not understandable.) I didn't go—take nothing.

"[VOLIN]:   Well, there's a gas can right here. You— you walking into this carport right here, and (not understandable).

"[DEFENDANT]:   (Interposing) That's not me. I didn't take nothing.

"[VOLIN]:   You just said this was you.

"[DEFENDANT]:   If that's me, I didn't take nothing. Okay?

"[VOLIN]:   So you just went into a shop and didn't take anything?

"[DEFENDANT]:   I didn't go in nobody's shop. Show me where there's a shop right there. I didn't go into nothing.

"[VOLIN]:   Okay, we said that was you. I watched the—the video of it.

"[DEFENDANT]:   Okay, that's fine.

"[VOLIN]:   He's got video inside the little shop, too, which is on the side of this garage.

"[DEFENDANT]:   I didn't—

"[VOLIN]:   (Interposing) You walk in. You grab a gas can. And then, you leave.

"[DEFENDANT]:   No, I did not. I didn't—are you going to arrest me?"

It is at that point in the encounter that the trial court found that compelling circumstances existed and that the officers failed to give *Miranda*-like warnings. Consequently, the trial court suppressed all further statements. As stated previously, on appeal, defendant contends that officers should have advised defendant of his *Miranda* rights at two alternative, earlier points in time: (1) when officers showed defendant a picture from a surveillance video of the burglary and asked who he thought was in the picture and (2) when defendant asked what the picture had to do with anything and the officer responded that the picture was defendant "right before [he] burglarized this guy's side shop and stole a gas can."

Article I, section 12, provides, in part, that "[n]o person shall be *** compelled in any criminal prosecution to testify against himself." To protect a person's right against compelled self-incrimination under that section, we have held that, before questioning, police must give *Miranda* warnings in circumstances that create a "setting which judges would, and officers should, recognize to be 'compelling.'" *State v. Smith*, 310 Or 1, 7, 791 P2d 836 (1990) (quoting *State v. Magee*, 304 Or 261, 265, 744 P2d 250 (1987)).

In determining whether compelling circumstances exist, the overarching inquiry is whether the officers created the sort of police-dominated atmosphere that *Miranda* warnings were intended to counteract. *See Miranda v. Arizona*, 384 US 436, 455-57, 86 S Ct 1602, 16 L Ed 2d 694 (1966) (explaining that warnings are necessary to ensure

that a person's statement is truly the product of free choice when that person is placed in an "incommunicado police-dominated atmosphere"); *Magee*, 304 Or at 264-65 (recognizing that the state *Miranda* requirement protects the same interests as the federal requirement).

In assessing that question, we consider the totality of the circumstances, including "(1) the location of the encounter; (2) the length of the encounter; (3) the amount of pressure exerted on the defendant; and (4) the defendant's ability to terminate the encounter." *Roble-Baker*, 340 Or at 640-41 (internal quotation marks and citation omitted). Those factors are nonexclusive, and we do not apply them "mechanically." *Id.* at 641. The answer to that question "turns on how a reasonable person in the suspect's position would have understood his or her situation." *State v. Shaff*, 343 Or 639, 645, 175 P3d 454 (2007); *see also State v. Courville*, 276 Or App 672, 677, 368 P3d 838 (2016) ("'Compelling circumstances' exist when the circumstances are such that an objectively reasonable person would feel compelled to answer the officer's questions.").

Defendant asserts that compelling circumstances existed, emphasizing the third *Roble-Baker* factor: the pressure officers exerted on defendant. In contrast with "general conversation" and "small talk" that precedes questioning under noncompelling circumstances, defendant contends that Volin's interaction with defendant began with a thinly veiled accusation about a "theft from a house yesterday" and pointed questions about defendant's whereabouts on the date the burglary occurred, followed by the coercive use of incriminating photographic evidence.

Expressly confronting a suspect with evidence of probable cause to arrest may create circumstances that are sufficiently compelling to require *Miranda* warnings, if the officers use that evidence in a coercive manner. *State v. McMillan*, 184 Or App 63, 68, 55 P3d 537 (2002), *rev den*, 335 Or 355 (2003); *see also State v. Werowinski*, 179 Or App 522, 40 P3d 545, *rev den*, 334 Or 632 (2002). An officer commenting on an evident result of a crime, asserting that a victim reported a crime, or asking questions that merely suggest that the officer is concerned about possible illegal activity,

is not sufficiently coercive to create compelling circumstances. *State v. Stone*, 269 Or App 745, 751, 346 P3d 595 (2015). Conversely, repeated accusations that the defendant is guilty, despite the defendant's unequivocal and repeated denials, can give rise to compelling circumstances. *State v. Heise-Fay*, 274 Or App 196, 206, 360 P3d 615 (2015).

However, the admission of statements elicited in violation of Article I, section 12, will not constitute reversable error on appeal when those statements are determined to be harmless. Article VII, section 3, of the Oregon Constitution provides, in part:

> "If the supreme court shall be of opinion, after consideration of all the matters thus submitted, that the judgment of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed, notwithstanding any error committed during the trial[.]"

"It is defendant's burden, as the party seeking reversal based on a claim of evidentiary error, to show some likelihood that the challenged evidence affected the verdict." *State v. Jones*, 296 Or App 553, 570-71, 439 P3d 485, *rev den*, 365 Or 557 (2019) (internal quotation marks and citation omitted). In determining whether to affirm a judgment under that constitutional provision, we review the record to decide whether there was "little likelihood" that the error affected the jury's verdict. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003); *see also State v. Lopez-Minjarez*, 350 Or 576, 587, 260 P3d 439 (2011). The focus of that inquiry "is on the possible influence of the error on the verdict rendered, not whether this court, sitting as a factfinder, would regard the evidence of guilt as substantial and compelling." *Davis*, 336 Or at 32. Evidence that is duplicative or unhelpful is harmless. *State v. McAnulty*, 356 Or 432, 460, 338 P3d 653 (2014), *cert den*, 577 US 829 (2015). Evidence that is "qualitatively different than the evidence that the jury heard," however, may be harmful. *Davis*, 336 Or at 34.

We begin by "determin[ing] the particular evidentiary issue that is subject to harmless error analysis." *State v. Maiden*, 222 Or App 9, 13, 191 P3d 803 (2008), *rev den*, 345 Or 618 (2009). Here, the disputed statements, which defendant contends are harmful pertaining to both his cases,

are relatively brief, comprising roughly 10 sentences that defendant uttered between when Volin said, "So, I'm going to show you a picture," and the point at which defendant asked if he was going to be arrested. All other statements by defendant either were suppressed by the trial court or occurred prior to compelling circumstances existing, even accepting defendant's argument.

Viewing the specific statements given by defendant during this window of time in the context of the record as a whole, we conclude that there is little likelihood that the verdicts were affected by the un-*Mirandized* statements that were admitted over defendant's objection. Many of defendant's statements were outright denials and protestations of innocence, such as "That's not me" and "I didn't take anything." Those statements, far from being harmful, were supportive of defendant's position at trial.

The most troublesome statement comes when defendant states, "if that's me, I didn't take nothing." However, even if one interprets that as an admission of defendant's *possible* presence at the location, that statement does not qualitatively differ from other evidence presented to the jury, specifically the photograph itself. Here, photographs from the surveillance footage were admitted into evidence for the fact finders' consideration. The fact finders were tasked, ultimately, with making the factual determination of whether the person in the photograph was defendant. Defendant's statement, "if that's me," which implies the opposite, that it also might *not* be him, added little to the fact finders' consideration beyond framing the question already before it: Was the person in the photograph defendant? Further, that statement was immediately followed by another protestation of innocence when defendant stated, "I didn't take nothing." We cannot conclude that those statements, viewed against the record as a whole, which included the surveillance photographs, had any likelihood of affecting the verdicts. We therefore need not determine if those statements were elicited in violation of Article I, section 12.

Finally, we turn to the judgment entered in Case No. 17CR32712. Defendant challenges the inclusion of an unpleaded enhancement factor—persistent involvement—in

his judgment of conviction for attempted first-degree bur-
glary. The state concedes that the trial court erred in includ-
ing that unpleaded enhancement factor but asserts that the
error is harmless because the trial court relied on another,
properly pleaded, enhancement factor in imposing the sen-
tence. We agree.

Before trial, the state gave notice of its intent to
enhance defendant's sentence based on three factors:

"1.  The defendant lacks empathy or sympathy for the
victim and/or his criminal conduct;

"2.  Future efforts to rehabilitate the defendant will
not be successful and there exists a need to ensure the
safety and security of the public; and

"3.  The defendant is unwilling to conform his conduct
to the requirements of the law."

Defendant waived his right to have a jury find the
enhancement facts. After receiving the jury's verdicts in
Case No. 17CR26632 and finding defendant guilty of second-
degree criminal mischief and attempted burglary in Case
No. 17CR32712, the trial court considered the enhancement
factors. The trial court rejected the first two factors and con-
sidered only the third. It then found that the state had proved
the "unwillingness to conform" factor and concluded that it
was not duplicative of the guidelines or "Repeat Property
Offender" statutes, because its rationale was not the same
as that captured in those sources of law. Defendant does not
challenge that ruling on appeal.

After the trial court made its ruling, the court
instructed the court clerk to create the judgment. It told
the clerk that it departed upward on the sentence because
"[h]e didn't conform his conduct to the law. And, his—and,
his record doesn't truly reflect his—reflect his criminal his-
tory." When the court looked at the judgment, it noticed that
the clerk had put "persistent involvement unrelated to the
current crime" instead of "unwilling to conform." The court
noted, in open court, that "it should be 'Doesn't conform his
conduct to the law,' instead of, 'Persistent involvement unre-
lated to the current crime.' I mean, you could put that. But,
the other one is he failed to conform his conduct with the

law—the requirements of the law." Ultimately, the judgment included two factors: "Persistent Involvement Unrelated to Current Crime" and "Guidelines don't reflect his criminal history and failure to conform to requirements of law."

Generally, we will affirm a judgment, even after concluding that a trial court erred in sentencing, when the record shows that the trial court could have imposed the same total sentence without the error, and we are "completely confident" that the trial court would impose the same sentence if the case were remanded for resentencing. *State v. Ortega-Gonsalez*, 287 Or App 526, 530, 404 P3d 1081 (2017) (quoting *State v. Calderon-Ortiz*, 222 Or App 1, 8, 191 P3d 808 (2008), *rev den*, 345 Or 618 (2009)). That is the case here. Based on this record, we are completely confident that the trial court imposed the upward departure sentence based on the third, pleaded factor independently, and that the inclusion of the persistent involvement factor was more akin to a clerical error than reflective of an additional basis of consideration.

However, both parties agree that, should we conclude that the inclusion of the persistent involvement factor in the judgment is harmless, which we do, the judgment should be corrected to remove that factor. Accordingly, we remand the judgment in Case No. 17CR32712 to the trial court for entry of a judgment eliminating the "persistent involvement" enhancement factor on defendant's conviction for attempted first-degree burglary.

In Case No. 17CR32712, remanded for entry of judgment omitting reference to "persistent involvement" enhancement factor on attempted first-degree burglary conviction; otherwise affirmed. In Case No. 17CR26632, affirmed.