332 August 14, 2024 No. 561

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KALEB JONATHON MOON,
*Defendant-Appellant.*

Lane County Circuit Court
20CR35733; A177339

Bradley A. Cascagnette, Judge.

Argued and submitted June 20, 2023.

James Brewer, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Leigh A. Salmon, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Powers, Judge, and Hellman, Judge.

POWERS, J.

Reversed and remanded.

**POWERS, J.**

In this criminal case, defendant appeals from a judgment of conviction after a jury found him guilty of driving under the influence of intoxicants, reckless driving, and recklessly endangering another person. In two assignments of error, defendant argues that the trial court erred when it excluded hearsay statements made by Bishop, in which Bishop told a deputy that he had been the driver of the car that drove up onto a curb and hit a parked car. Specifically, defendant contends that the statements were admissible under the hearsay exception for statements against interest, OEC 804(3)(c), and alternatively that, if the statements were inadmissible, their exclusion violated his rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. We conclude that the statements were against Bishop's penal interest and that there was sufficient corroboration for the statements to be admitted under OEC 804(3)(c). Moreover, excluding the statements was not harmless. Because we conclude that the statements were admissible, we do not consider defendant's constitutional arguments. Accordingly, we reverse and remand.

## I.   BACKGROUND

We begin by describing background information to give context for defendant's challenge to the excluded hearsay statements. In the early morning in June 2020, a person driving a Toyota, with two passengers, drove up onto a curb and hit a parked car, causing damage. A witness called 9-1-1 to report the incident and noted that the tallest of the three people was the driver of the Toyota.[1] It is undisputed that Bishop was the tallest of the three people who were in the Toyota.

Deputy Dodds responded to the call and stopped two people that matched the description given by the 9-1-1 caller, defendant and Natali, who both denied knowledge of the crash. While Dodds was questioning defendant and Natali, he heard "yelling and screaming," and a third person, Bishop, came up to them and said that a woman was being

---

[1] That statement was admitted at trial only for its effect on the investigation, not for its truth.

assaulted. Dodds decided to investigate the assault and told defendant, Natali, and Bishop that they were free to leave. Defendant and Natali then got into a taxi. After Dodds determined that there had been no assault and learned that defendant was the registered owner of the Toyota, another deputy stopped the taxi that defendant and Natali were in.

Dodds investigated defendant's involvement in the car crash and learned that defendant, Bishop, and Natali lived together. Eventually, defendant admitted to Dodds that he had been the driver of the Toyota and that Bishop and Natali were passengers. Defendant explained that he had been drinking prior to driving and that he crashed the car when he used the emergency brake to drift—or slide the car—as he turned a corner. Defendant was subsequently arrested and charged with felony driving under the influence of intoxicants, failure to perform the duties of a driver when property is damaged, reckless driving, and recklessly endangering another person.

About three weeks after defendant's arrest, and one week before arraignment, Bishop called the district attorney's office to report that he, not defendant, had been the driver of the Toyota. Dodds then arranged to meet with Bishop in person the following day to discuss the call. The statements that Bishop made to Dodds during that meeting are the subject of this appeal. Thus, we turn to the details of that interaction.

At trial, defendant sought to introduce evidence regarding Dodds's meeting with Bishop. Defendant first called Bishop to testify, and Bishop asserted his right against self-incrimination and was thus unavailable to testify.[2] Defendant then called Dodds to testify about his conversation with Bishop. Dodds testified that he went to Bishop's house, where he found Bishop sitting in his driveway "drinking a fifth of Jack Daniels." Dodds testified that Bishop was intoxicated and "slurring" his words but that Bishop was coherent and able to "convers[e] normally." Defense counsel asked Dodds about the statements that Bishop made to Dodds about the night of the accident, and the state objected on hearsay grounds. Defendant argued

---

[2] At the time of the trial, Bishop had pending charges against him arising from his act of telling Dodds about the alleged assault the night of the incident.

that the hearsay statements were admissible under OEC 804(3)(c), which is set out below.[3]

To rule on the objection, the court allowed defendant to make an offer of proof. Defense counsel proceeded to question Dodds outside the presence of the jury, and Dodds testified that, before beginning the conversation, he read Bishop his *Miranda* rights and that Bishop appeared to understand them. Bishop then told Dodds that he, defendant, and Natali "had been out drinking" before the crash and that he had driven the car because defendant was too intoxicated to drive. Bishop explained that he had trouble driving a stick shift and that "they went up on a curb on accident" because "the vehicle got stuck in gear." Bishop told Dodds that he did not come forward earlier about being the driver because he "thought [defendant] was being released so he didn't feel like he needed to say anything."

Ultimately, the trial court excluded Dodds's proposed testimony regarding Bishop's statements. The court determined that, although the statements were against Bishop's penal interest, they were not admissible under OEC 804(3)(c) because there were insufficient corroborating circumstances. The jury then returned to the courtroom, and the trial proceeded. Dodds testified that he called defendant after talking with Bishop and asked if defendant wanted "to change anything about his story." Defendant told Dodds that he was aware that Bishop had claimed to be the driver, and defendant explained that he "wasn't very appreciative of the fact that Bishop had called to take credit for him driving because he felt that it made him look bad." Defendant reiterated that he was the driver of the Toyota and that it was "important that he take responsibility." Ultimately, the jury found defendant guilty as described above, and defendant timely appealed.

On appeal, defendant renews his argument that the statements that Bishop made to Dodds admitting to being the driver were sufficiently corroborated and should have been admitted under the OEC 804(3)(c) hearsay exception

---

[3] OEC 804 has been amended since defendant's trial. Or Laws 2023, ch 141, § 1. Those amendments, however, do not affect our analysis, and therefore we refer to the current version of the statute in this opinion.

and asserts that excluding them was not harmless error. In the alternative, defendant argues that, if we determine that the statements are inadmissible under OEC 804(3)(c), it would violate his rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution to prohibit the admission of Bishop's statements of third-party guilt. The state remonstrates that the evidence does not sufficiently corroborate Bishop's statements. Moreover, the state offers an alternative basis for affirmance—that the statements were not against Bishop's penal interest and thus do not satisfy the "against interest" prong of the OEC 804(3)(c) hearsay exception.[4]

## II.   ANALYSIS

We review a trial court's "preliminary factual determinations" to determine if "any evidence in the record supports them." *State v. Cook*, 340 Or 530, 537, 135 P3d 260 (2006). We review a trial court's legal conclusion regarding whether a hearsay statement is admissible under a hearsay exception for errors of law. *Id.*

OEC 804 provides, in part:

"(3)   The following are not excluded by [OEC 802 or the hearsay rule] if the declarant is unavailable as a witness:

"*  *  *  *  *

"(c)   A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true. A statement tending to expose the declarant to criminal liability and offered to

---

[4] In advancing its alternative argument, the state cites to *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659, 20 P3d 180 (2001) (describing the "right for the wrong reason" doctrine). As we have explained before, however, *Outdoor Media* applies to issues raised for the first time on appeal, not to issues—like the one presented here—that were raised before the trial court and rejected. *See Sherertz v. Brownstein Rask*, 314 Or App 331, 341-42, 498 P3d 850 (2021) (explaining that, when an issue is raised for the first time on appeal, the doctrine in *Outdoor Media* may be used if specified criteria are met; whereas, when an argument was made before the trial court and is made again on appeal, *Outdoor Media* does not apply and we will normally resolve the issue, unless a remand is necessary for factual findings, exercise of discretion, or the like).

exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

It is undisputed that Bishop was unavailable to testify. Thus, the two issues in this case are (1) whether the statements were against Bishop's interest and (2) whether there was sufficient corroboration.

A.  *Statements Against Interest*

We conclude that Bishop's statements were against his penal interest for purposes of OEC 804(3)(c). In determining whether statements are against a declarant's interest, we consider the statements as a whole rather than examine each individual statement or sentence separately. *Cook*, 340 Or at 538. For a statement to be against a declarant's penal interest, the statement need not be a confession to a crime, but it must "'tend' to subject [the declarant] to criminal liability." *State v. Schutte*, 146 Or App 97, 102, 932 P2d 77 (1997). Moreover, there must be evidence—or an inference that could be drawn from the evidence—that the declarant realized, at the time of making the statements, that the statements were against the declarant's interest. *State v. Kaino-Smith*, 277 Or App 516, 525, 371 P3d 1256 (2016).

Here, Bishop's statements were made after Dodds read Bishop his *Miranda* rights, and thus Bishop should have been aware that his statements could be used against him in a criminal prosecution. Moreover, Bishop told Dodds that he, defendant, and Natali had been out drinking that night and admitted to driving the car up onto the curb and hitting another car. Additionally, Bishop contacted the district attorney's office and spoke to Dodds after defendant had been arrested and cited for crimes relating to the accident, which would have alerted Bishop that his statements could be used as the basis for criminal charges against him.

In arguing for a different conclusion, the state contends that Bishop's statements were not against his interest because, in its view, Bishop never admitted to any wrongdoing and his story suggests an intent to protect his interests and simultaneously exculpate defendant. Specifically, the

state argues that Bishop's statement that defendant was too intoxicated to drive implies that Bishop was not intoxicated and that Bishop drove up onto the curb because of an understandable issue driving a stick shift, which is not criminal conduct. However, Bishop did admit that he had been out drinking that night and admitted to being the driver of a car that was in a crash that caused property damage. Therefore, despite any alternative motivation that Bishop could have had in making those statements, we conclude that the statements tended to subject Bishop to criminal liability. Accordingly, we reject the state's contention that Bishop's statements did not satisfy the "against interest" prong of the OEC 804(3)(c) hearsay exception.

B. *Sufficient Corroboration*

Second, we conclude that the statements were sufficiently corroborated. To determine whether there are sufficient corroborating circumstances that "clearly indicate the trustworthiness of the statement" for purposes of OEC 804(3)(c), we consider the entire context of the statements. *See, e.g.*, *State v. Cazares-Mendez/Reyes-Sanchez*, 350 Or 491, 514-15, 256 P3d 104 (2011) (considering the context of the statements, including their spontaneity, repetition, additional corroborating details, the time the statements were made, and whether the declarant had a motive to fabricate). There is no "magic formula" for determining corroboration, and each case must be analyzed based on its own individual circumstances. *State v. Edwards-Peecher*, 218 Or App 311, 318, 179 P3d 746 (2008). Here, the statements are corroborated by evidence that the 9-1-1 caller reported that the tallest of the three men was the driver, and there is undisputed evidence that Bishop was the tallest of the three occupants of the car.[5] Moreover, it is undisputed that Bishop was in the car at the time of the accident, and thus he was one of three people who could have been the driver. The circumstances surrounding the statements further indicate their trustworthiness. First, Bishop admitted on at least two occasions that he was the driver—to the district attorney's office and

---

[5] Even though the evidence of the 9-1-1 caller's statement was not admitted for its truth, in determining preliminary questions as to the admissibility of evidence, courts are not bound by the rules of evidence except for privileges. *See* OEC 104(1).

to Dodds. *See Cazares-Mendez/Reyes-Sanchez*, 350 Or at 514 (explaining that the declarant "confess[ing] on four separate occasions to four different witnesses" is a corroborating circumstance). Second, Bishop's statements included other details of the accident, such as the location of the car on the curb. *See id.* at 515 (explaining that the declarant's statements were more reliable because they "included additional, corroborating details about the crime").

　　To be sure, there are some circumstances that weigh against trustworthiness. First, Bishop and defendant were friends and roommates, and Bishop's statements were not spontaneous. Thus, Bishop could have fabricated a story to help his friend. *See Edwards-Peecher*, 218 Or App at 318-19 (concluding that the relationship between the declarant and the defendant—the declarant was the defendant's juvenile son dependent on her for his support—and that the declarant did not make the statements until after the defendant was charged were circumstances that weighed against trustworthiness because they gave rise to a reasonable inference that the son belatedly fabricated the statement to assist his mother's defense). Second, Bishop was drinking while speaking to Dodds, which could have made his statements less trustworthy. However, Dodds testified that Bishop was coherent and could converse normally. On balance and given the entire context of Bishop's statements, we conclude that the statements were sufficiently corroborated and trustworthy such that they should have been considered by the jury. *See Cazares-Mendez/Reyes-Sanchez*, 350 Or at 506-07 (explaining that the corroboration requirement serves primarily to determine whether the statements are "trustworthy" enough to be considered by the jury; the jury ultimately decides the credibility of the witness and whether to believe the statements). Because we conclude that Bishop's statements were admissible under OEC 804(3)(c), we need not consider defendant's due process arguments.

C.　*Harmlessness*

　　Finally, we conclude that the error was not harmless. Under Article VII (Amended), section 3, of the Oregon Constitution, we will affirm a judgment, even if the court erred in excluding evidence, if the error has little likelihood

of affecting the verdict. *State v. Davis*, 336 Or 19, 32-33, 77 P3d 1111 (2003). Although evidence that is cumulative or duplicative can be considered harmless, if the evidence is qualitatively different from what the jury heard, it may be harmful. *State v. Pusztai*, 309 Or App 95, 104, 481 P3d 946, *rev den*, 368 Or 348 (2021). The state contends that, because the jury heard testimony that Bishop told the district attorney's office that he was the driver, and because defendant repeatedly stated that he was the driver even after learning of Bishop's conversation with Dodds, excluding Bishop's statements to Dodds was harmless. We disagree with the state's argument because the statements were qualitatively different.

Bishop's statement to the district attorney's office included an admission that he was the driver. The statements to Dodds, however, consisted of that same admission and also included a more complete statement about the incident, including why Bishop was driving and how the car ended up on the curb. In our view, although Bishop repeated the statement that he was the driver, those additional details make the statements to Dodds qualitatively different from what the jury already heard such that we cannot conclude that error in excluding those statements had little likelihood of affecting the verdict. In short, we conclude that the omission of Bishop's statements to Dodds, which went to a central factual issue, was not harmless.

Reversed and remanded.