Argued and submitted December 3, 2021, affirmed January 26, petition for review denied June 23, 2022 (369 Or 856)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TODD LEVI WILCOX,
aka Todd Wilcox,
*Defendant-Appellant.*

Jackson County Circuit Court
16CR46729; A170718

504 P3d 695

In this criminal appeal, defendant contests his conviction of murder, assigning error to, among other things, the trial court's exclusion of an out-of-court recording of defendant's brother talking with police, and denial of a motion for judgment of acquittal. On appeal, defendant argues that the recording was admissible because it was offered for a nonhearsay purpose and the trial court erred by excluding it as hearsay. Defendant also argues that since the evidence of guilt was even as to whether defendant or defendant's brother killed the victim, the trial court erred by denying the motion for judgment of acquittal. *Held*: Defendant did not adequately preserve for appeal his argument regarding the police recording because all argument at trial suggested he was seeking an exception to the hearsay rule for admitting the recording. Moreover, even if parts of the recording were admissible, defendant did not attempt to segregate the admissible portions from the inadmissible portions, which precludes review on appeal. Finally, the evidence was sufficient for the trial court, sitting as trier of fact, to conclude that defendant killed the victim.

Affirmed.

Lorenzo A. Mejia, Judge.

David O. Ferry, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services. Todd Levi Wilcox filed the supplemental brief *pro se*.

Jordan R. Silk, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before James, Presiding Judge, and Lagesen, Chief Judge, and Kistler, Senior Judge.

KISTLER, S. J.

Affirmed.

**KISTLER, S. J.**

Defendant appeals a judgment of conviction for murder constituting domestic violence. *See* ORS 163.115 (2015).[1] We write to address two assignments of error—that the trial court erred in not admitting defendant's brother's out-of-court colloquy with the police and in denying defendant's motion for a judgment of acquittal. We uphold without discussion the other rulings that defendant challenges on appeal and affirm the trial court's judgment.

Defendant grew marijuana in Jackson County. He lived in a doublewide trailer at the top of a hill on a sparsely traveled lane. His brother Shane lived off and on in a trailer a short distance below defendant's doublewide trailer. Although a defense witness explained that Shane usually stayed in the lower trailer, she added that Shane was "kind of transient, homeless, or stayed at the river or something."

The victim was a young woman who had left college to work in defendant's marijuana-grow operation. She stayed some of the time in the lower trailer where Shane lived and also in defendant's doublewide trailer. One evening, defendant and the victim stopped by a neighbor's house to socialize. Defendant began drinking bourbon and became increasingly intoxicated and belligerent towards the victim. Among other things, he accused the victim of costing him approximately $165,000, apparently because of a mistake she had made processing marijuana. Additionally, the victim told the neighbor that defendant had headbutted her earlier that day, although she denied that he had hurt her.

The neighbor offered to call the police because she was concerned for the victim's safety, but the victim declined. At approximately 10:00 p.m., the neighbor asked defendant to leave because of the way he was talking to the victim. The neighbor saw the victim stumble as she and defendant walked to his car. The neighbor watched as defendant's car drove to the lower trailer, stopped briefly, and then continued uphill to defendant's doublewide.

---

[1] ORS 163.115 was amended in 2015 and again in 2019. *See* Or Laws 2015, ch 820, § 46; Or Laws 2019, ch 634, § 28.

At 2:00 a.m. the next morning, defendant's brother Shane woke up another neighbor and asked if he could use the neighbor's phone to call 9-1-1. Shane explained that defendant had come to his house, woken him up, and told him that the victim had died from an overdose. Using the neighbor's phone, Shane told the 9-1-1 operator essentially the same information and added that defendant had taken a whole "scrip" of pills. Shane told the operator that the victim and defendant were at defendant's house at the top of the hill, that he did not know if the victim was breathing, and that it could be a suicide attempt. Shane waited outside the neighbor's house for the emergency medical personnel to arrive so that he could accompany them and the police to defendant's house.

When the emergency personnel got to the house, they found the victim dead, propped up against a table in the bedroom. There was blood all over the bedroom and bathroom. The emergency personnel found defendant passed out on a mattress in the bedroom, next to the victim's body. The emergency personnel were able to revive defendant, and the police placed him under arrest. Later, defendant made numerous statements that were introduced at trial.

*Shane's colloquy with the police.* After the police discovered the victim's body and placed defendant under arrest, they advised Shane of his *Miranda* rights and spoke with him briefly. (The interview ended when Shane began having seizures caused by alcohol withdrawal.) Shane's colloquy with the officers divides into four parts. First, the officers asked Shane about an older cut on his arm and a fresh mark near his eye, which Shane explained resulted from "some guy" hitting him. Second, the officers sought to determine where Shane was sleeping when defendant woke him up to tell him that the victim was dead. Third, Shane told the officers that, after defendant woke him up, he followed defendant up the hill to defendant's house, where he saw the victim, who did not appear to be breathing, and then saw defendant take a "scrip" of pills. Shane explained that he ran down the hill to find a phone so that he could call 9-1-1. Fourth, Shane recounted defendant's version of the events that occurred the night of the victim's death. Specifically, Shane said that defendant told him that the victim had

left the neighbor's house before defendant, that defendant arrived home later and found the victim stumbling around and bleeding profusely from her mouth and nose, and that defendant tried to revive the victim before fearing that his efforts were unsuccessful. After that, he went to get Shane.

At the time of trial, Shane could not be found, and the parties stipulated that he was unavailable. When defendant sought to introduce Shane's colloquy with the police, the state objected that it was hearsay. Defendant responded initially that Shane's unavailability was sufficient, without more, to make his hearsay statements admissible. The state pointed out, and the trial court agreed, that unavailability alone is not a sufficient basis for admitting hearsay. Defendant then argued that Shane's statements were admissible under three exceptions to the hearsay rule—state of mind, excited utterance, and statements against penal interest. Defendant also suggested that, even if the rule against hearsay barred admitting the colloquy, due process required its admission. The trial court disagreed and sustained the state's objection.

On appeal, defendant does not argue, as he did below, that Shane's colloquy with the officers was admissible under an exception to the hearsay rule. Rather, he argues that the colloquy was not hearsay because all or part of the colloquy was not offered for the truth of the matter asserted. Defendant's appellate argument faces two related but separate preservation problems. First, the question whether a statement is hearsay will vary depending on the purpose for which it is offered. *See* OEC 801(3) (defining hearsay). Defense counsel, however, never told the trial court that she was offering Shane's statements for any purpose other than for the truth of the matter asserted. Indeed, all her arguments at trial rested on the premise that she was offering the statements for the truth of the matter asserted, and she contended only that the statements were admissible either as an exception to the rule against hearsay or because due process required their admission.[2] Defense counsel failed

---

[2] Defendant notes that, in arguing that due process required the admission of Shane's hearsay statements, his lawyer told the trial court that Shane's

to preserve the ground for admission that defendant now raises on appeal. *See State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000) (preservation requires a clear, specific objection).

Defendant's argument faces a second problem. The Supreme Court has long recognized that, when a party unsuccessfully offers evidence as a whole, without segregating admissible from inadmissible parts of the offer, the trial court's ruling sustaining an objection will be affirmed on appeal if part of the offer is inadmissible. *See State v. Brown*, 310 Or 347, 358-59, 800 P2d 259 (1990) (stating rule); *Biegler v. Kirby*, 281 Or 423, 426, 574 P2d 1127 (1978) (upholding trial court's ruling because the trial court was not required to sort out admissible from inadmissible evidence). In this case, most of Shane's colloquy appears to have been offered for the truth of the matter asserted. For example, Shane recounted defendant's exculpatory version of how the victim died (she arrived at defendant's house first, she was bleeding profusely when defendant came home, and defendant attempted unsuccessfully to care for her injuries). Similarly, Shane explained how he had run to the neighbor's house to find a phone to call 9-1-1, and he answered the officers' questions about the injuries they observed on his arm and face.

For all that appears from the record, defendant offered those statements for the truth of the matter asserted—to exculpate himself, to explain the events that led to the emergency personnel entering his home, and to support a conclusion that Shane had injuries to his face that could have been inflicted by the victim. Even if Shane's statements regarding where he was sleeping were admissible for a nonhearsay purpose and even if the trial court should have realized that defendant was offering part of the colloquy for that purpose, defendant cannot object to the trial court's ruling when he failed to separate the admissible

---

statements about where he was sleeping were evasive and evidenced Shane's guilt. Defendant contends that the trial court should have realized that he wanted to admit those statements for that reason, not for the truth of the matter asserted. Defendant, however, made that argument to support his claim that some of Shane's statements came within a hearsay exception (statements against penal interest) or were so central to his defense that due process required their admission even if the hearsay rule barred them. All defendant's trial arguments rested on the premise that Shane's statements were hearsay.

part of the colloquy from the inadmissible part. *Brown*, 310 Or at 359.[3]

Defendant suggests alternatively that due process required that Shane's colloquy with the police be admitted. The cases that defendant cites, however, apply when a state evidentiary rule arbitrarily bars admission of trustworthy evidence critical to a person's defense. *Chambers v. Mississippi*, 410 US 284, 93 S Ct 1038, 35 L Ed 2d 297 (1973); *State v. Cazares-Mendez/Reyes-Sanchez*, 350 Or 491, 256 P3d 104 (2011). Defendant cites no case for the proposition that *Chambers* applies when the excluded evidence would have been admissible if offered for the right reason. In that situation, post-conviction would seem to provide all the process that is due. Beyond that, Shane's brief colloquy with the officers can hardly be described as critical defense evidence. Most of what Shane told the officers repeated either what Shane said during his 9-1-1 call or statements that defendant made after his arrest, all of which were admitted at trial.

One part of the colloquy that is not duplicated elsewhere in the record consists of Shane's statements regarding where he was sleeping when defendant woke him. Defendant argues that Shane's responses to that series of questions were evasive and gave rise to an inference of guilt. Specifically, Shane told the officers that he was sleeping in a trailer "just down the hill from [his brother's] house," that the trailer was not on his brother's property, that the trailer was located "at a neighbor's house," and that the victim had stayed there "when she first got here." Although Shane's statements are not without ambiguity, he appears to have told the officers that there were three trailers—the doublewide where his brother lived, a trailer below that on his brother's property, and a third trailer on someone else's property where the victim initially had lived. That reading

---

[3] Defendant argues on appeal that every part of Shane's colloquy could have been admitted for some purpose other than the truth of the matter asserted. Even if that is so, those purposes, if they exist at all, are far from apparent. Defendant cannot fault the trial court for taking the premise of his trial argument at face value—that Shane's statements were being offered for the truth of the matter asserted. For similar reasons, we are not persuaded by defendant's argument that any error in sustaining the state's objection constitutes plain error.

of Shane's statements is consistent with the testimony of a defense witness, who told the court that there were three trailers and that the victim initially had stayed at the third trailer on a neighbor's property below the other two.

Given that testimony, the trial court reasonably could have inferred that Shane's answers, although imprecise, permitted at most a weak inference that he was being evasive. That is particularly true since any ambiguity in Shane's answers about where he was sleeping could have arisen from (1) the fact that Shane was essentially a transient, as defendant's witness had testified, (2) inartful questioning by the officers, who did not appreciate Shane's fluid living situation, and (3) Shane's medical condition when he spoke with the officers.[4] To the extent that any evasiveness on Shane's part permitted a weak inference of guilt, that inference is a far cry from the clear evidence of guilt, such as a third party's confession to murder, that gave rise to the due process holdings in *Chambers* and *Cazares-Mendez*.

*Motion for a judgment of acquittal.* Defendant does not dispute on appeal that the trier of fact reasonably could find that whoever killed the victim did so with the requisite mental state. As we understand his argument, he contends that the only conclusion that a reasonable trier of fact could draw was that the evidence was in equipoise as to whether he or Shane had beaten the victim to death. It follows, he concludes, that no reasonable trier of fact could find beyond a reasonable doubt that he was the person who killed the victim.

On that issue, the evidence permitted the trial court, sitting as the trier of fact, to find that, shortly before the victim died, defendant had been angry with her for supposedly ruining $165,000 worth of marijuana, that he had headbutted her earlier that day, that he had become increasingly intoxicated and belligerent towards her at a neighbor's house, and that the neighbor had been sufficiently concerned for the victim's safety that she offered to call the police on

---

[4] Before the trial court ruled on defendant's due process argument, defendant introduced testimony that the medical condition that led to Shane's seizure, which in turn ended his colloquy with the officers, can result in hallucinations and confusion.

the victim's behalf. Moreover, the court could find that, when the police entered defendant's house, they found defendant passed out next to the victim, who had been beaten to death.

As noted, after the police placed defendant under arrest, he made numerous statements. Among other things, he said that he and the victim had been at the neighbor's house, that they had gone home, that she had overdosed on cocaine, that she had "faceplanted" on the stairs, that she was bleeding profusely from her mouth and nose, that he tried to staunch the bleeding from her chin with duct tape, that he had dragged her into the bathtub to reverse the effects of her drug overdose and accidentally caused her head to hit the side of the tub, and that he had tried to revive her for two-and-a-half hours. He said that, when those efforts proved unsuccessful, he could not find his cell phone and woke up his brother Shane to go for help.

Although defendant argues that the only conclusion that the trial court reasonably could have reached was that it was equally possible that Shane could have beaten the victim at the lower trailer before taking her body up to defendant's doublewide trailer and dropping it off, the trial court reasonably could have found otherwise. The trial court reasonably could have inferred from defendant's statements, set out above, that only defendant had been with the victim from the time she left the neighbor's house unharmed until her death. Moreover, defendant never said that Shane had any connection to the victim's injuries, and the trial court reasonably could have found that, unlike defendant, Shane had neither a motive nor an opportunity to harm the victim. Finally, the trial court could have credited the neighbor's testimony that, when Shane arrived at his house to call 9-1-1, the neighbor did not notice any blood on Shane that would suggest that Shane was the one who had beaten the victim.

To be sure, at trial, defendant called a different neighbor to testify, who said that, the day after the victim's death, he saw Shane cleaning blood off the walls of the victim's room in the lower trailer. However, the witness also testified that he had not seen any blood at the upper trailer where the victim's body was found, aside from a spot of blood.

Given the amount of blood where the victim was found, the trial court was not required to credit the witness's testimony.[5] Additionally, the trial court was not required to find that the evidence as to who killed the victim was in equipoise, nor did it err in denying defendant's motion for a judgment of acquittal.

Affirmed.

---

[5] The witness made a gratuitous statement during his testimony that the government had "jerry-rig[ged his] phone so I have to talk to them," which also could have led the court to doubt the accuracy of the witness's observations.